UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>Plaintiff,<br><br>- vs -<br><br>ARHAM & AYDIN INVESTMENT, INC., *et al.,*<br><br>Defendants. | CASE NO.: 4:26-cv-03853 |

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

Plaintiff, Joe Hand Promotions, Inc. ("Plaintiff" and/or "JHP"), by its attorney, files this its Motion for Final Default Judgment and Supporting Brief and moves for the entry of a final default judgment against Defendants, Arham & Aydin Investment, Inc., d/b/a Daiquiri Island To Go #14, d/b/a Daiquiri Island To Go, and d/b/a Daiquiris To Go ("Inc."), and Zeeshan Fareed ("Fareed"), which is supported by the following brief and the accompanying appendix. Inc. and Fareed shall be referred to collectively as "Defendants."

# TABLE OF CONTENTS

A. NATURE AND STAGE OF THE PROCEEDING ..... 1

B. STATEMENT OF THE ISSUES ..... 1

C. SUMMARY OF THE ARGUMENT ..... 2

D. UNDISPUTED EVIDENCE ..... 3

E. FACTS ..... 3

F. ARGUMENTS & AUTHORITIES ..... 5

1. THE FCA ..... 5
2. STATUTORY DAMAGES UNDER 47 U.S.C. § 605(e)(3)(C)(i)(II) ..... 8
3. DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii) ..... 12

G. ATTORNEY'S FEES AND COSTS ..... 16

H. CONCLUSION ..... 17

I. PRAYER ..... 18

# TABLE OF AUTHORITIES

## Cases

*American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986) ........ 11

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991) ........ 10

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ........ 8

*Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (citation omitted) ........ 13

*Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ........ 10

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952) ........ 8, 9

*Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) ........ 7

*G&G Closed Circuit Events, LLC v. EP Tr., LLC*, No. EP-21-CV-226-DCG, 2022 WL 891968, at *4 (W.D. Tex. Mar. 25, 2022) ........ 13

*J & J Sports Productions, Inc. v. Casita Guanajuato, Inc.*, 2014 WL 1092177, at *1 (W.D.Tex. Mar. 19, 2014) ........ 5

*J&J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) ........ 15

*J&J Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017) ........ 17

*J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 817 (N.D. Tex. 2015) ........ 13

*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F.Supp.3d 747, 753-54 (S.D. Tex. 2014) .......... 5, 6, 15

*Joe Hand Promotions, Inc. v. Kidder Entertainment Group of SA, LLC*, No. SA-24-CV-192-FB-HJB, 2025 WL 1806191, at * 3-4 (W.D. Tex. May 29, 2025) (Report and Recommendation of United States Magistrate Judge) (Bemporad, Mag. J.) .......... 12, 15

*Joe Hand Promotions, Inc. v. Macias,* No. 4:11-cv-01773, 2012 WL 950157 at *2 (S.D.Tex. March 19, 2012) (Memorandum and Order) (Atlas, J.) .......... 6

*Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Nathaniel, J.) .......... 13

*Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) .......... 7

*Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012) .......... 16

*Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, No. 4:18-cv-01666, 2019 WL 3500854 at *5 (Memorandum and Order, Doc. #39) (S.D. Tex. July 31, 2019) (Atlas, N.) .......... 17

*KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001) .......... 14

*KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) .......... 5

*KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.) .......... 14

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981) .......... 8

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). 8

*Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975) .......... 2

*Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986) 12

*Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) ........ 7, 14

*U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.Miss. 1992) ........ 7

**Rules/Statutes**

17 U.S.C. § 101 ........ 9, 10

28 U.S.C. § 1920 ........ 16

47 U.S.C. § 553 ........ 1, 2, 5, 7

47 U.S.C. § 605 ........ 1, 2, 3, 5, 7, 16

47 U.S.C. § 605(e)(3)(B)(iii) ........ 2, 16

47 U.S.C. § 605(e)(3)(C)(i)(II) ........ 2, 8, 18

47 U.S.C. § 605(e)(3)(C)(ii) ........ 1, 2, 12, 15, 16, 18

Federal Communications Act of 1934 ........ 1, 2, 5, 6, 7, 8, 9, 12, 17

**PLAINTIFF, JOE HAND PROMOTIONS, INC.'S**
**MOTION FOR FINAL DEFAULT JUDGMENT AND SUPPORTING BRIEF**

## A. NATURE AND STAGE OF THE PROCEEDING

1. On May 13, 2026, JHP sued Defendants complaining of the unauthorized and illegal interception and/or receipt and exhibition of the broadcast of the audiovisual closed-circuit broadcast of the *Jake Paul vs. Nate Diaz* boxing match, including all undercard bouts and commentary, telecast on August 5, 2023 (the "Program") at the commercial establishment known as Daiquiri Island To Go #14/Daiquiri Island To Go/Daiquiris To Go located at 1602 Cypress Creek Parkway/FM 1960 Rd. West, Houston, Texas 77090 (the "Establishment") without authorization from or payment to JHP. *See* Dkt. #1.

2. On July 23, 2026, the Deputy Clerk entered default against Defendants. *See* Dkt. #11.

3. JHP seeks the entry of a final default judgment for statutory damages under the Federal Communications Act of 1934, as amended (the "FCA"). The standard of review is de novo. In its Complaint, JHP asserted piracy claims under the FCA, 47 U.S.C. 605 *et seq.* or, alternatively, 47 U.S.C. § 553, *et seq.* In this Motion, JHP moves for final default judgment solely under Title 47 U.S.C. § 605.

## B. STATEMENT OF THE ISSUES

- Whether Defendants violated Title 47 U.S.C. § 605 by exhibiting the Program at the Establishment without payment to or authorization from Plaintiff.
- Whether Defendants' unauthorized exhibition of the Program was willful and for the purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

- Whether $30,000.00 is the appropriate amount of statutory damages for Defendants' willful violation of the FCA. 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii).

- Whether Plaintiff is entitled to an award of its attorney's fees and costs. 47 U.S.C. § 605(e)(3)(B)(iii).

## C. SUMMARY OF THE ARGUMENT

4. JHP pled piracy claims against Defendants under the FCA. The FCA protects against the piracy of radio and television signals. *See* 47 U.S.C. §§ 553 and 605. By this Motion, JHP seeks default judgment under 47 U.S.C. § 605.

5. 47 U.S.C. § 605 provides:

> . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

6. Defendants received and exhibited or assisted in the receipt and exhibition of the Program at the Establishment showing the Program on multiple televisions to paying patrons. The exhibition of the Program at the Establishment was advertised on social media to draw patrons to the Establishment.

7. By Defendants' default, the Court should accept the well pleaded allegations of facts in the Complaint. *See* e.g., *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200 (5th Cir. 1975).

8. JHP seeks the entry of a final default judgment against Defendants, jointly and severally, for $30,000.00 in statutory damages for their willful violation of 47 U.S.C. § 605, plus interest, costs, and attorney's fees.

## D. UNDISPUTED EVIDENCE

9. With this Motion, JHP files its Appendix ("App") in Support of this Motion (Pgs. 1-4), which includes the following exhibits ("Ex"): Ex A (Pg. Nos. 5-15), Ex B (Pg. Nos. 16-24), Ex B(1) (Pg. Nos. 25-37), Ex B(2) (Pg. Nos. 38-39), Ex B(3) (Pg. Nos. 40-53), Ex C (Pg. Nos. 54-56), Ex C(1) (Pg. Nos. 57-58), Ex D (Pg. Nos. 59-64), and Ex D(1) (Pg. Nos. 65-67). Page numbers referred to in this Motion are page numbers of exhibits attached to and made a part of the appendix.

## E. FACTS

10. In addition to the admitted-through-default allegations in Plaintiff's Complaint [*See* Dkt. #1 and #11], JHP submits its exhibits attached to the App and incorporated by reference. Pursuant to Plaintiff's Complaint and the evidence, the following facts are established:

a. The Inc. conducted business as Daiquiri Island To Go #14, Daiquiri Island To Go, and Daiquiris To Go, owned, operated, maintained, and controlled the Establishment on the date of the Program. *See* Dkt. #1 at ¶ 4, Ex A, Pg. Nos. 5-15, Ex. B(3) at Pg. Nos. 43-45, Ex C at ¶ 3, Pg. No. 56, and Ex C(1) at Pg. No. 58.

b. On the date of the Program, Fareed was an officer, director, shareholder, and/or principal of the Inc., an entity owning and operating the Establishment, had a right and ability to supervise the activities of the Establishment, and had an obvious and direct financial interest in the activities of the Establishment. *See* Dkt. #1 at ¶¶ 5, 15 and Ex A, Pg. Nos. 6-11.

c. Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events. *See* Dkt. #1 at ¶¶ 3, 6-8 and Ex B at ¶ 4, Pg. No. 18.

d. Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the Program for businesses such as the Establishment. *See Id.* and Ex B(1) at §§ 1, 11, Pg. Nos. 26, 30.

e. Through an agreement with the Licensor of the Program, Plaintiff was licensed to distribute and authorize the public exhibition of the Program at commercial locations such as bars, restaurants, clubhouses, shops, and other commercial establishments throughout the State of Texas. *See* Dkt. #1 at ¶¶ 3, 6-8, Ex B at ¶ 4, Pg. No. 18, and Ex B(1) §§ 1, 11, Pg. Nos. 26, 30.

f. In Texas, the Program was legally available to commercial establishments such as the Establishment only through an agreement with Plaintiff. *See Id.*

g. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program. If a commercial establishment was authorized by Plaintiff to receive the Program, Plaintiff would authorize the receipt of the signal of the Program via an internet stream by authorizing the internet platform to enable the content on a customer account provided by Plaintiff where Plaintiff would provide the establishment with a username and password to access the Program. *See* Dkt. #1 at ¶¶ 6-10 and Ex B at ¶¶ 5-6, 8, 10-11, Pg. Nos. 19-20.

h. Plaintiff did not take any steps that would enable the Establishment to legally obtain the Program via an internet stream. Plaintiff did not authorize the Establishment to receive and exhibit the Program to its patrons. *See* Dkt. #1 at ¶ 14 and Ex B at ¶¶ 9, 12, Pg. Nos. 20-21.

i. Authorized commercial establishments that contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Program. This sublicense fee was based on the occupancy/capacity of an establishment. According to the Affidavit of Eugenio Alemany, the Establishment had an approximate occupancy/capacity of approximately 30-40 people. For an establishment with an occupancy/capacity of 30-40 people, the fee for a legal broadcast would have been $775.00 In this case, the commercial sublicense fee to broadcast the Program was not paid. *See* Dkt. #1 at ¶ 8, Ex B at ¶¶ 8-9, Pg. Nos. 19-20, Ex B(2), Pg. Nos. 38-39, and Ex B(3), Pg. No. 41.

j. On the night of the Program, Eugenio Alemany, an eye-witness, entered the Establishment and observed the Program being broadcast on multiple televisions to the Establishment's patrons. *See* Ex B at ¶ 9, Pg. No. 20 and Ex B(3), Pg. Nos. 40-53.

k. Joseph P. Hand, III (*also known as* Joe Hand Jr.), Plaintiff's President, believes that Plaintiff's programming was not and cannot be mistakenly, innocently, or accidentally intercepted in the Houston, Texas area. Accordingly, Defendants could not have obtained the transmission of the Program had Defendants not undertaken specific wrongful actions to intercept and/or receive and exhibit the telecast of the Program. *See* Ex B at ¶¶ 10-13, Pg. Nos. 20-21.

l. To entice patrons to the Establishment to spend money, the broadcast of the Program at the Establishment was advertised on social media inviting everyone to the Establishment to watch the Program. *See* Ex C at ¶ 3, Pg. No. 56 and Ex C(1), Pg. Nos. 57-58.

## F. ARGUMENTS & AUTHORITIES

### 1. THE FCA

11. The unauthorized interception and broadcast of cable or over the air transmissions violates 47 U.S.C. §§ 553 or 605. Accordingly, unlawful interception and/or receipt and broadcast of the signal of the Program are violations of the FCA.

12. "To violate the [FCA], which is a strict liability statute, a plaintiff ('aggrieved party') need only prove that (1) the [Program] was shown in the Defendants' Establishment and (2) Plaintiff did not authorize the exhibition of the [Program] there." *Joe Hand Promotions, Inc. v. 152 Bronx, LP*, 11 F.Supp.3d 747, 753 (S.D. Tex. March 26, 2014) (citing 47 U.S.C. § 605; *J & J Sports Productions, Inc. v. Casita Guanajuato, Inc.,* 2014 WL 1092177, at *1 (W.D.Tex. Mar. 19, 2014), *citing Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 349 (9th Cir.1999) (the finding that bar had, without

authorization, shown a preliminary bout required judgment in favor of the plaintiff), and *Joe Hand Promotions, Inc. v. Macias,* No. H–11–1773, 2012 WL 950157, at *2 (S.D.Tex. Mar. 19, 2012)).

13. Individuals may be held vicariously liable under the FCA if the individual had the following: "(1) the right and ability to supervise the unauthorized activities of the establishment in those activities" and (2) "an obvious and direct financial interest in those activities." *See 152 Bronx, L.P.* at 11 F.Supp.3d 747, 753-54 (S.D. Tex. 2014).

14. On the date of the Program, Inc. conducted business as Daiquiri Island To Go #14, Daiquiri Island To Go, and Daiquiris To Go and owned, operated, maintained, and controlled the Establishment; on the date of the Program, Fareed was an officer, director, shareholder, and/or principal of the Inc., the entity owning and operating the Establishment with a right and ability to supervise and a direct financial interest in the activities of the Establishment; the Program was exhibited at the Establishment without authorization from or payment to Plaintiff, the exclusive holder of the commercial distribution license. *See* Dkt. #1 at ¶¶ 3-16, 18-19, 21-22, Ex A, Pg. Nos. 5-15, Ex B at ¶¶ 4-13, Pg. Nos. 18-21, Ex B(1), Pg. Nos. 25-37, Ex B(2), Pg. Nos. 38-39, Ex B(3), Pg. Nos. 40-53, Ex C at ¶ 3, Pg. No. 56, and Ex C(1), Pg. Nos. 57-58.

15. In order for an unauthorized commercial establishment to receive a broadcast such as the Program, there must be some wrongful action such as circumventing commercial licensing requirements to steal programming through internet streaming for residential/non-commercial use only. *See* Ex B at ¶¶ 10-13, Pg. Nos. 20-21, Ex. C at ¶ 3,

Pg. No. 56, and Ex C(1), Pg. Nos. 57-58; *Joe Hand Promotions, Inc. v. Maupin*, 2018 WL 2417840, at *6 (E.D.N.Y. May 25, 2018) ("exhibitions of television programs broadcasted via the internet could serve as a basis for liability under Section 553 and 605"); and *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp.2d 485, 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems").

16. Defendants' default alone establishes liability as ". . . . conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted).

17. Given the above, it is clear Plaintiff has met its burden with respect to liability in this matter. In this Motion, Plaintiff submits evidence to support damages under the FCA, specifically seeking damages under 47 U.S.C. § 605.

18. In 1988, in an effort to further deter piracy, Congress amended the FCA to provide for more severe penalties for violations. "The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts." *See U.S. v. Scott*, 783 F. Supp. 280, 282 (N.D.Miss. 1992) (citing 1988 *U.S. Code Cong. & Admin. News* 5577, 5657-58).

### 2. Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II)

19. As its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990).

20. Pursuant to the FCA, the amount of statutory damages to which Plaintiff is entitled for each violation shall be not less than $1,000.00 and not more than $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II). For the reasons set forth herein, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $10,000.00 for Defendants' violation of the FCA.

21. Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *See F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

22. As stated above and supported by the evidence referenced herein, on the date of the Program, Defendants, themselves and/or through their agents, servants, and/or employees, intercepted and/or received or assisted in the interception and/or receipt of the telecast of the Program, broadcasted or assisted in the broadcast of the Program to the patrons at Defendants' Establishment, and broadcasted the Program to the patrons at Defendants' Establishment without paying any sublicense fees to Plaintiff. *See* Dkt. #1 at ¶¶ 3-16, 18-

19, 21-22, Ex A, Pg. Nos. 5-15, Ex B at ¶¶ 4-13, Pg. Nos. 18-21, Ex B(1), Pg. Nos. 25-37, Ex B(2), Pg. Nos. 38-39, Ex B(3), Pg. Nos. 40-53, Ex C at ¶ 3, Pg. No. 56, and Ex C(1), Pg. Nos. 57-58.

23. In the instant case, as more fully discussed below, it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff because of Defendants' unlawful actions. Accordingly, Plaintiff elects to receive statutory damages.

24. Because the statute defining statutory damage awards for violations of the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (the "Copyright Act") is analogous to the FCA, its case law is influential in analyzing the amount of statutory damages to which Plaintiff is entitled. According to the Supreme Court of the United States, when determining the applicable statutory damage award under the Copyright Act, the amount of profits lost by the copyright holder is not the only criteria for a Court to consider. *Woolworth*, 344 U.S. at 233. Rather, "a rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id.* at 233.

25. Applying the courts' analysis from their decisions under the Copyright Act, the lost income from the sale of the Program to Defendants' Establishment represents only a starting place for the determination of the amount of damages to which Plaintiff is entitled as a result of Defendants' wrongful acts. *See*, e.g., *Entertainment by J&J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp.2d 769, 776 (S.D. Tex. 2002) ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the [Program] does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.") (citations omitted).

26. Factors to consider in determining a statutory damage award include: (1) the "fair market value of the rights infringed," (2) the "revenue lost by the plaintiff and profits gained by the defendant," (3) "the infringer's state of mind," and (4) "deterrence of future infringement." *See Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991). For an establishment with a capacity of 30-40 people, the sublicense fee would have been $775.00. *See* Ex B at ¶ 8, Pg. No. 19, Ex B(2), Pg. Nos. 38-39, and Ex B(3), Pg. No. 41.

27. Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Program to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities, reputation, and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Program to Defendants'

Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D.Fla. 1986).

28. Types of damages suffered by Plaintiff and factors related to same include the following:

a. Plaintiff loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments which steal sports and other closed-circuit programming.

b. Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

c. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional losses.

d. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

*See* Ex B at ¶¶ 5, 14-17, Pg. Nos. 19, 21-23.

29. Plaintiff suffers ongoing loss to its goodwill and reputation and loss of its right and ability to control and receive payment for the transmission, because patrons viewing the pirated program at Defendants' Establishment would likely have become patrons of an authorized establishment thereby increasing the value of the Program and Plaintiff's

business opportunities. *See* Ex B at ¶¶ 5, 14-17, Pg. Nos. 19, 21-23; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986).

30. The continued viability of Plaintiff's business relies upon the willingness and ability of commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming such as the Program. *See* Ex B at ¶¶ 5, 14-17, Pg. Nos. 19, 21-23.

31. Given the benefits which Defendants received from the broadcast of the Program (the revenue from sales during the Program and establishing good will by providing access to the Program) and the types of damages Plaintiff suffered, it is fair and reasonable to assess damages against Defendants and award to Plaintiff statutory damages in the amount of $10,000.00.

### 3. DAMAGES FOR WILLFUL ACT UNDER 47 U.S.C. § 605(e)(3)(C)(ii)

32. Plaintiff also requests damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) considering the willful violation "for purposes of direct or indirect commercial advantage or private financial gain." "Although 'the FCA does not define 'willfully,' courts have applied the definition of willfulness provided by the Supreme Court in civil contexts, under which courts inquire whether a defendant's conduct entailed a 'disregard for the governing statute and an indifference for its requirements.'" *Joe Hand Promotions, Inc. v. Kidder Entertainment Group of SA, LLC*, SA-24-CV-192-FB-HJB, 2025 WL 1806191, * 3 (W.D. Tex. May 29, 2025) (Report and Recommendation of United States Magistrate Judge) (Bemporad, Mag. J.) (report and recommendation accepted by Order Accepting Report and

Recommendation of United States Magistrate Judge, 2025 WL 1797262 (June 30, 2025)) (citing *G&G Closed Circuit Events, LLC v. EP Tr., LLC*, No. EP-21-CV-226-DCG, 2022 WL 891968, at *4 (W.D. Tex. Mar. 25, 2022) (quoting *Cablevision Sys. N.Y. City Corp. v. Lokshin*, 980 F. Supp. 107, 114 (E.D.N.Y. 1997) (citation omitted)). "Where, as here, the defendant exhibited the telecast at a commercial establishment without proper authorization, the Court may infer Defendants' knowledge of and disregard for the statute." *Id.* (citing *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 817 (N.D. Tex. 2015) (inferring willfulness given "the unlikelihood that an establishment could intercept such broadcasts by chance")).

33. Defendants specifically and willfully acted to illegally intercept the transmission of the Program for Defendants' commercial advantage, because Defendants could not have "innocently" accessed the broadcast of the Program. *See* Ex B at ¶¶ 10-13, Pg. Nos. 20-21. *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) (Nathaniel, J.) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be: (a) using an illegal descrambler in a satellite receiver; (b) using a pirate cable box; (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing ***any one*** of these means to defraud plaintiff would be evidence of

willfulness and would support an award of enhanced damages.") (emphasis added).

34. Defendants knew or should have known it was wrong to receive, intercept, and divert the scrambled signal of the Program and to broadcast it in Defendants' commercial Establishment. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp.2d 438, 442 (S.D.N.Y. 2001); *see also Time Warner Cable*, 77 F. Supp.2d at 490 (S.D.N.Y. 1999) (when finding willfulness the court stated, "there can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. *Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.*") (emphasis added). *See also KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.") (emphasis added).

35. Defendants' purpose and intent in exhibiting the Program was to secure a private financial gain and direct commercial advantage by pirating Plaintiff's licensed exhibition and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff as shown in the following evidence:

a. **Multiple televisions:** The broadcast of the Program at the Establishment was shown on multiple televisions. *See* Ex B at ¶ 9, Pg. No. 20, and Ex. B(3), Pg. Nos. 40-53.

b. **Sales:** The Establishment sold food and/or drinks on the date and during the broadcast of the Program. *See* Dkt. #1 at ¶ 12, Ex A, Pg. Nos. 12-15, Ex B at ¶ 9, Pg. No. 20, and Ex B(3) where the eyewitness ordered a alcoholic beverage during the broadcast of the Program, Pg. No. 41.

c. **Advertisement of Program:** The broadcast of Program at the Establishment was advertised on social media enticing patrons to the Establishment. *See* Ex C at ¶ 3, Pg. No. 56, and Ex C(1), Pg. Nos. 57-58.

36. Where Plaintiff's evidence showed the Defendants advertised the program in advance, displayed it on multiple televisions, sold food and drinks during the broadcast, and where the establishment in question was located in an urban area in San Antonio, Texas where a larger number of patrons could be drawn in to view the pirated program, the district court found "[g]iven the significant evidence of willfulness here, the suggested 5X multiplier appears to be reasonable…" *Kidder Entertainment Group of SA, LLC*, No. SA-24-CV-192-FB-HJB, 2025 WL 1806191, at * 3-4 (W.D. Tex. May 29, 2025) (citing 47 U.S.C. § 605(e)(3)(C)(ii); *152 Bronx, L.P.*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (explaining, in determining amount of enhanced award, courts have considered factors such as "the number of televisions on which defendants broadcast the Event, the food and beverages it sold to customers, as well as the cover charge, and whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact") (collecting cases); *J&J Sports Prods., Inc. v. Garcia*, No. H-08-1675, 2009 WL 2567891, at *4 (S.D. Tex. Aug. 14, 2009) ("Defendant openly advertised the Event on the marquee

outside its establishment which serves as evidence that the Event was shown for the purpose of commercial advantage or private financial gains.”).

37. Therefore, pursuant to Section 605(e)(3)(C)(ii), in addition to the reasons set forth above, the minimum amount of Twenty Thousand Dollars ($20,000.00) (or two times the amount of statutory damages, if $10,000.00 in statutory damages awarded) should be awarded to Plaintiff.

**G. ATTORNEY’S FEES AND COSTS**

38. Plaintiff requests an award of attorney’s fees and costs pursuant to Section 605(e)(3)(B)(iii). Under Section 605(e)(3)(B)(iii), the award of attorney’s fees is mandatory. According to Section 605(e)(3)(B)(iii), “[t]he Court... shall direct the recovery of full costs, including awarding reasonable attorneys’ fees...”

39. By the language of the statute, Plaintiff’s costs should not be limited to taxable costs under 28 U.S.C. § 1920. 47 U.S.C. § 605 allows for the recovery of “full costs.” “[Plaintiff’s] costs associated with retaining a private process server are not taxable under § 1920... Nevertheless, because [Plaintiff] is entitled to recover its ‘full costs,’ not merely its taxable costs under § 1920, the Court will award [Plaintiff] $675.00 in connection with service of process. *Cf. Kingvision Pay-Per-View*, 426 F.Supp. 2d at 67 (concluding ‘full costs’ under § 605 includes investigative costs); *Joe Hand Promotions, Inc. v. Rascals Cafe, LLC*, No. 4:11-2135-TLW, 2012 WL 4762142, at *6 (D.S.C. Aug. 31, 2012)(awarding ‘investigative costs,’ ‘postage charges,’ and ‘courier charges’ under § 605), *report and recommendation adopted*, 2012 WL 4762452 (D.S.C. Oct. 5, 2012); *J&J*

*Sports Prods., Inc. v. Molina & Reyes Enters., LLC*, No. SA-17-CV-278-XR, 2017 WL 10841353, at *2 (W.D. Tex. Nov. 29, 2017)(awarding investigative fees)." *See Joe Hand Promotions, Inc. v. SNP Hookah Lounge and Grill LLC, et al.*, No. 4:18-cv-01666, 2019 WL 3500854 at *5 (Memorandum and Order, Doc. #39) (S.D. Tex. July 31, 2019) (Atlas, J.).

40. Plaintiff seeks an attorney's fees award for the prosecution of this action through the final default judgment requested. *See* Ex D, Pg. Nos. 59-64, and Ex D(1), Pg. Nos. 65-67. In addition, Plaintiff seeks an award of costs in the amount of $572.50, which costs have been proven by declaration with the attached invoices. *See* Ex D at ¶ 7, Pg. No. 64 and Ex D(1), Pg. Nos. 65-67.

**H. CONCLUSION**

41. In conclusion, the averments that Defendants, willfully and for purposes of commercial advantage and private financial gain, illegally intercepted and/or received the pay-per-view broadcast of the Program, and Defendants exhibited the Program in their commercial Establishment without authorization and without paying the commercial sublicensing fee to Plaintiff are deemed admitted and supported by evidence. Accordingly, pursuant to the FCA and the statutory damages permitted thereunder, Plaintiff seeks the entry of a final default judgment in favor of Plaintiff and against Defendants for the relief sought in this Motion.

## I. PRAYER

Plaintiff respectfully requests the Court sign and cause to be entered a final default judgment in favor of Plaintiff, JOE HAND PROMOTIONS, INC. and against Defendants, ARHAM & AYDIN INVESTMENT, INC., d/b/a DAIQUIRI ISLAND TO GO #14, d/b/a DAIQUIRI ISLAND TO GO, and d/b/a DAIQUIRIS TO GO, and ZEESHAN FAREED awarding Plaintiff;

(1) Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants, jointly and severally, in the amount of $10,000.00; and

(2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants, jointly and severally, in the amount of $20,000.00; and

(3) Attorney's fees from Defendants, jointly and severally, in the amount presented in the Declaration for Attorney's Fees and Costs (for prosecution of this case through the final default judgment); and

(4) Costs from Defendants, jointly and severally, in the amount of $572.50; and

(5) Post-judgment interest at the highest lawful rate; and

(6) Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

JAMIE KING, P.C.

*/s/ Jamie King*
Jamie King
Attorney-in-Charge
State Bar No. 24043755
SDTX No. 566838
P.O. Box 5757
Kingwood, Texas 77325
(832) 584-0106 Telephone
(888) 247-0443 Facsimile
jamie@jamiekingpc.com

ATTORNEY FOR PLAINTIFF,
JOE HAND PROMOTIONS, INC.

**CERTIFICATE OF COMPLIANCE**

This Motion complies with Section 16c. of the Court Procedures of the Hon. Nicholas J. Ganjei, because it contains 4,973 words, excluding the case caption, table of contents, table of authorities, signature block, and certificates, as determined by the word-count function of Microsoft Word 2021.

*/s/ Jamie King*
Jamie King

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was served on this 8th day of September, 2026 as follows:

*Via U.S. Mail, Postage Prepaid and Certified Mail, Return Receipt Requested upon:*

Arham & Aydin Investment, Inc.
c/o Zeeshan Fareed
138 Southmore Ave.
Pasadena, Texas 77502

Arham & Aydin Investment, Inc.
1602 Cypress Creek Parkway
Houston, Texas 77090

Zeeshan Fareed
138 Southmore Ave.
Pasadena, Texas 77502

*/s/ Jamie King*
Jamie King

9/8/2026
Date