UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>Plaintiff,<br><br>- vs -<br><br>ARHAM & AYDIN INVESTMENT, INC., *et al.*,<br><br>Defendants. | CASE NO.: 4:26-cv-03853 |

**<u>EXHIBIT B</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>Plaintiff,<br><br>- vs -<br><br>ARHAM & AYDIN INVESTMENT, INC., *et al.,*<br><br>Defendants. | CASE NO.: 4:26-cv-03853 |

**DECLARATION OF JOSEPH P. HAND, III**

I, JOSEPH P. HAND, III, declare as follows:

1. My name is Joseph P. Hand, III, *also known as* Joe Hand Jr. I am the President of Plaintiff, Joe Hand Promotions, Inc. and have been for over 20 years and, as such, I am familiar with the facts, circumstances, and proceedings of the instant matter. I am over the age of 18 years and competent to make this declaration. As President of Plaintiff, Joe Hand Promotions, Inc. at all material times in this case, facts in this declaration are within my personal knowledge and are true and correct.

2. As President of Plaintiff, Joe Hand Promotions, Inc. ("JHP"), I am the custodian of records of JHP. Exhibits B(1) and B(2) attached to this declaration are business records of JHP. The above referenced exhibits were kept in the course of regularly conducted activity of JHP, and it was the regular practice of that activity for an employee or representative of JHP, with knowledge of the act, event, condition, opinion, or diagnosis

recorded, to make the records or transmit information thereof to be included in such records; and such records were made at or near the time or reasonably soon thereafter. The above referenced exhibits are the originals or duplicates of the originals.

3. I make this declaration in support of JHP's request to recover statutory damages, including attorney's fees, costs, and interest in the above styled case.

4. Our company, JHP, is a commercial licensor of sports and entertainment programming. JHP purchased the exclusive commercial license to distribute and authorize the public exhibition of the audiovisual closed-circuit broadcast of the *Jake Paul vs. Nate Diaz* boxing match, including all undercard bouts and commentary, telecast on August 5, 2023 ("Program") for businesses such as the business made the basis of this case. JHP held the exclusive commercial license to distribute and authorize the public exhibition of the Program in the State of Texas for exhibition in establishments such as the one that is the subject of this case. Our company thereafter marketed the sublicensing (commercial exhibition) rights for the Program to our company's commercial customers (i.e., bars, restaurants, clubhouses, shops, and similar locations). The sale of our company's commercial distribution rights to programming such as the Program is the crux of our business and critical to its continued viability. A true and correct copy of the Commercial Licensing Agreement (redacted) for the Program is attached as Exhibit B(1).

5. JHP began to experience serious erosion in the sales of our own proprietary programming to our commercial customers throughout the United States of America. To protect ourselves, we endeavored to find out the basis for the erosion and determined from our customers that the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed establishments (signal pirates).

6. In response, we embarked upon a nationwide program to police our signals for the purpose of identifying and prosecuting commercial establishments which pirate our programming (including the Program involved in this case).

7. Specifically, auditors were retained, at considerable expense, to detect and identify signal pirates. To ensure that only illegal locations were visited by the auditors, our company compiled its confidential list of customers (authorized and legal locations) who paid the required sublicense fee to broadcast the Program, and this list was distributed to participating auditing agencies in strict confidence.

8. Domestic commercial establishments, which contract with JHP, were required to pay our company a commercial sublicense fee to broadcast the Program. This sublicense fee for the Program was based on the occupancy/capacity of the establishment. For example, for the Program, if a commercial establishment had an occupancy/capacity of 30-40 people, the commercial sublicense fee for the Program would have been $775.00. In this case, the commercial sublicense fee to broadcast the Program was not paid. A true and correct copy of the Rate Card for the Program is attached as Exhibit B(2).

9. The Program contained televised undercard bouts and color commentary, along with the main event prizefight. As set forth in his affidavit, Eugenio Alemany, an eye witness, entered the commercial establishment known as Daiquiri Island Togo located at 1602 FM 1960 Road West, Houston, Texas 77090 on August 5, 2023 and observed the Program (namely the undercard bout between Angel Beltran and Alan Sanchez, which is a part of the Program) being broadcast on multiple televisions. At no time did this commercial establishment ever lawfully license the Program from our company for such a purpose. This commercial establishment was not authorized by JHP nor did it pay to JHP the proper commercial sublicense fee to exhibit the Program. A true and correct copy of the Affidavit of Eugenio Alemany along with photographs and videos is attached as Exhibit B(3).

10. The Program broadcast originated via satellite uplink and was subsequently re-transmitted via a satellite signal. The interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the undercard bouts and the main prizefight of the Program.

11. Upon receipt of the proper commercial sublicense fee by JHP from a commercial establishment for the Program, JHP would authorize the receipt of the signal of the Program via an internet stream by authorizing the internet platform to enable the content on a customer account provided by JHP where JHP would provide the establishment with a username and password to access the Program.

12. JHP did not take any steps that would enable the business known as Daiquiri Island To Go #14/Daiquiri Island To Go/Daiquiris To Go located at 1602 Cypress Creek Parkway/FM 1960 Rd. West, Houston, Texas 77090 (the "Establishment") to legally obtain the Program via an internet stream. JHP did not authorize this Establishment to receive and exhibit the Program.

13. I believe that our programming was *not* and *cannot* be mistakenly, innocently, or accidentally intercepted in the Houston, Texas area. For the past several years, commercial locations would employ residential cable and satellite equipment to circumvent commercial licensing requirements and pirate our programming. More recently, signal pirates have engaged in similar illegal conduct to steal programming through internet streaming for residential/non-commercial use only.

14. It is respectfully submitted that the unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of television broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

15. Although difficult to quantify, types of damages suffered by our company and our customers include the following:

a. Our company loses customers, which are unwilling and financially unable to compete with those unauthorized commercial establishments which steal sports and other closed-circuit programming.

b. Because some unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments, the legitimate commercial establishments with the right to broadcast closed-circuit programming attract fewer paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons, and/or incur financial loss.

c. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment likely increases and, as a result, our company and the authorized commercial establishments suffer additional losses.

d. Theft of closed-circuit broadcasts, such as the Program, by unauthorized commercial establishments adversely affects both JHP and its customers. JHP pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. JHP's primary source of revenue is the sublicense fees which it charges to authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Program.

16. We, at JHP, believe that the persistent signal piracy of our programming costs our company, our customers, and their communities millions of dollars annually resulting, in part, from the perceived lack of consequences. For these reasons, I ask this court to grant a substantial allowance for statutory damages.

17. Clearly, this Establishment had no justification to steal our programming and exhibit it for its own financial benefit, except to deny our company the commercial sublicense fees to which JHP was rightfully entitled.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 2____ day of September, 2026 at Feasterville, Pennsylvania.

Joseph P. Hand, III
Joseph P. Hand, III (Sep 2, 2026 21:46:27 GMT+2)

Joseph P. Hand, III,
*also known as* Joe Hand, Jr.
*President of Plaintiff, Joe Hand Promotions, Inc. (JHP)*

# Joe Hand Declaration_Daiquiri Island

Final Audit Report 2026-09-02

| | |
|---|---|
| Created: | 2026-09-02 |
| By: | Jekielek & Janis (settlement@jj-lawyers.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAVes6yYchi32FI05FJhwN7iTIeo8Gy1RB |

## "Joe Hand Declaration_Daiquiri Island" History

- Document created by Jekielek & Janis (settlement@jj-lawyers.com)
  2026-09-02 - 7:40:48 PM GMT

- Document emailed to Joseph P. Hand, III (joejr@joehandpromotions.com) for signature
  2026-09-02 - 7:40:53 PM GMT

- Email viewed by Joseph P. Hand, III (joejr@joehandpromotions.com)
  2026-09-02 - 7:45:55 PM GMT

- Document e-signed by Joseph P. Hand, III (joejr@joehandpromotions.com)
  Signature Date: 2026-09-02 - 7:46:27 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_TYPE

- Agreement completed.
  2026-09-02 - 7:46:27 PM GMT